UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA

      -v.-                                                                         1:06-CR-0120 (LEK)

MARCEL BULLOCK and
DOLPHUS PRYOR,

                                    Defendants.
_____

## MEMORANDUM-DECISION AND ORDER

On March 30, 2006, Defendants Dolphus Pryor ("Defendant Pryor" or "Pryor") and Marcel Bullock ("Defendant Bullock" or "Bullock") were charged in a one-count indictment with conspiring to obstruct commerce, in violation of 18 U.S.C. § 1951(a). Indictment (Dkt. No. 12). Following trial, the jury returned a guilty verdict as to both Defendants. Dkt. No. 80. Before the Court are Motions by both Defendants seeking a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(a), a mistrial, or a new trial pursuant to Federal Rule of Criminal Procedure 33(a). Bullock Mot. (Dkt. No. 88); Pryor Mot. (Dkt. No. 87). For the reasons that follow, Defendants' Motions are denied.

**I.    BACKGROUND**

On March 30, 2006, Defendants Pryor and Bullock were charged in a one-count indictment with conspiring to obstruct commerce, in violation of 18 U.S.C. § 1951(a). See Indictment. The Government brought the charges following its investigation of an alleged robbery of a home in Troy, New York in the fall of 2001. See Dkt. No. 1. The Government brought charges against Defendants due to their alleged robbery of the house of Ed "Radiator" Hauerstein at 312 Second

1

Street in Troy.  See id.

The Government's evidence included oral and written statements allegedly made by the Defendants to law enforcement.  On March 13, 2005, Federal Bureau of Investigation Special Agent Charles Kessler ("Special Agent Kessler" or "Kessler") and former Troy Police Department Detective Sergeant John Riegert ("Detective Sergeant Riegert" or "Riegert") approached Defendant Pryor at his home in Watervliet, New York.  Suppression Hr'g Mins. at 6 (Dkt. No. 50).  On March 16, 2005, Special Agent Kessler and Detective Sergeant Riegert similarly approached Defendant Bullock at his home in Rhode Island.  Id. at 27.  On both occasions, Special Agent Kessler and Detective Sergeant Riegert asked each Defendant to accompany them to a law enforcement building to discuss any information that each Defendant might have regarding a double homicide in Troy, New York.  Dkt. No. 55. at 1-2.  Each Defendant agreed to do so.  Id.  Prior to their respective questioning, each Defendant signed a form waiving his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966).  Id. at 2-3.  During the course of the interviews, each Defendant allegedly made oral statements concerning his involvement in a robbery, and those statements were also memorialized in written form.  Dkt. No. 35, Attach. 1; Dkt. No. 31, Attach. 2.  Police conducted a follow-up interview with Pryor at his home on June 2, 2005.  Suppression Hr'g Mins. at 111.  Police did not administer Miranda rights prior to this second interview.  Dkt. No. 55. at 2.

Both Defendants moved to suppress their oral and written statements, on the grounds that the statements were not given voluntarily pursuant to Miranda.[1]  Motions (Dkt. Nos. 31, 32).  On April 9 and 16, 2008, the Court held a suppression hearing.  On November 11, 2008, the Court issued an

---

[1] The Court notes that Defendant Pryor's current counsel was appointed on March 26, 2008, after the Motion to suppress had been filed but before the suppression hearing.

Order denying Defendants' Motions. Order (Dkt. No. 56). The Court concluded that both Defendants validly waived their Miranda rights regarding the March 2005 statements given to law enforcement. Id. at 2-6. The Court also concluded that there was no evidence that Defendant Pryor was in custody for Miranda purposes during his June 2, 2005 follow-up interview with the police. Id. at 6-7.

Following the selection of a jury on March 30, 2009, the Court conducted a jury trial which began on March 31, 2009 and concluded on April 3, 2009. At the close of the Government's case on April 1, 2009, Defendants moved for a judgment of acquittal pursuant to Rule 29. The Court reserved decision on the Motion. During an *in camera* conference on the morning of April 3, 2009, Defendants moved for a mistrial, on the grounds that each Defendant's statement implicated the other yet neither Defendant testified, in violation of Bruton v. United States, 391 U.S. 123 (1968). The Court reserved decision on that Motion as well. The jury returned a guilty verdict as to both Defendants. Defendants filed the pending Motions on May 1, 2009. Dkt. Nos. 87, 88. The Government submitted a Response on May 19, 2009. Dkt. No. 91.

## II.   MOTION FOR ACQUITTAL PURSUANT TO RULE 29

### A.   Standard of Review

Rule 29 of the Federal Rules of Criminal Procedure provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." FED. R. CRIM. P. 29(a). "[A] district court can enter a judgment of acquittal on the grounds of insufficient evidence only if, after viewing the evidence in the light most favorable to the prosecution and drawing all reasonable inferences in the government's favor, [the court] concludes no rational trier of fact could have found the defendant

guilty beyond a reasonable doubt." United States v. Reyes, 302 F.3d 48, 52 (2d Cir. 2002) (citing Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). A court "may not substitute [its] own determinations of credibility or relative weight of the evidence for that of the jury." United States v. Autuori, 212 F.3d 105, 114 (2d Cir. 2000). A court ruling on a Rule 29 motion must "consider the evidence in its totality, not in isolation, and the government need not negate every theory of innocence" offered by the defendant. Autuori, 212 F.3d at 114 (citing United States v. Rosenthal, 9 F.3d 1016, 1024 (2d Cir. 1993)).

### B.     Discussion

The indictment charged each Defendant with interference with commerce by robbery or attempted robbery in violation of 18 U.S.C. § 1951(a). To convict each Defendant, the Government was required to prove beyond a reasonable doubt the following elements: (1) that the defendant either obtained or took, or attempted to obtain or take, the property of another; (2) that the defendant took or attempted to take the property against the victim's will, by actual or threatened force, violence, or fear of injury, whether immediate or in the future; (3) that such actions actually or potentially, in any way or degree, obstructed, delayed or affected interstate commerce; and (4) the defendant acted unlawfully, willfully, and knowingly.

Defendants contend that the evidence adduced at trial was insufficient to sustain a conviction. Defendants argue that various inconsistencies in the witness testimony and inconsistencies in the Defendants' statements require a judgment of acquittal. Such alleged inconsistencies include the number of individuals involved in the robbery and the items taken by the perpetrators of the robbery.

At trial, the Government introduced each Defendant's written statement admitting to robbing

4

a house in south Troy. The Government called as witnesses Special Agent Kessler and Detective Sergeant Riegert. Kessler and Riegert had investigated the case and were present when Defendants gave their oral and written statements. Kessler and Riegert testified extensively about the circumstances surrounding Defendants' conversations with law enforcement and the statements given by each Defendant concerning the robbery.

The Government also called four witnesses who testified to being present at a robbery at Hauerstein's home on Second Street in Troy in the fall of 2001–Hauerstein himself, Judy Krug ("Krug") (Hauerstein's then live-in girlfriend), Mike Zilligitt, and Dave Mamone. All four witnesses testified that the house was a "crack house" where Hauerstein and Krug sold crack cocaine. All four also testified that James "Finney" Smith and Ray McGrath were also present during the robbery. Krug and Hauerstein both testified that the robbery occurred a short time before the police executed a search warrant on the house. They both recalled that the warrant was executed in December of 2001, and the Government also provided evidence that the Troy Police Department executed a search warrant on the address on December 5, 2001. Hauerstein, Zilligitt and Mamone all testified that they had only been robbed one time in their lives–at Hauerstein's house in Troy. Krug testified that she had been the victim of two robberies, including once while she lived with Hauerstein at 312 Second Street. Hauerstein, Krug and Zilligitt all testified that Finney Smith opened the door for the robbers. The Government also called an expert witness to establish that cocaine moves through interstate commerce.

In his written statement, Defendant Pryor described a robbery he was involved in alongside Defendant Bullock. Dkt. 31, Attach. 2. Pryor stated that Bullock was "going to buy from Radiator on 2nd St. Phinny Reed opened the door. Blacks, Hispanics and white people were inside. We had

5

sticks and we threatened them. Asked them where the shit was but they didn't have anything." Id. at 5. Bullock's written statement also described a robbery he was involved in alongside Pryor. Bullock stated that:

> maybe in 2001 or 2002 I was with Junie Pryor and another guy I know as "Neff" . . . we all went to this house which was in south Troy a block or two down from where the bridge/ canal was. . . . Junie knocked, the door opens and we ran in. Neff had a big flashlight and he was hitting them all with it. I remember there was maybe 4 white guys and one Hispanic guy. One of the guy's name [was] "Radiator" and I also remember that Finnie Reed was in the house and he actually let us in. Junie made everyone lay down with the gun and we emptied everyone's pockets. Out of all of them, we only took about maybe a single dollar from this girl that was also in there. There was maybe $100 worth of crack all together.

Dkt. 35, Attach. 1 at 20-21.

Viewing the evidence in the light most favorable to the Government, the Court does not conclude that no rational jury could have found Defendants guilty beyond a reasonable doubt. There are, indeed, some inconsistencies between the Defendants' statements. For example, while Pryor does not mention a third person being involved, Bullock states that he and Pryor were joined by "Neff." Pryor also states that the people in the house didn't have anything, while Bullock states that they took a small quantity of money and drugs. There were some inconsistencies in the witness testimony–for example, as to whether there were two or three individuals robbing the house. However, viewing the evidence in its totality and in the light most favorable to the Government, the Court concludes that these inconsistencies are not so striking as to prevent a rational jury from finding Defendants guilty beyond a reasonable doubt. Both Defendants' statements describe a robbery of a crack house in Troy. Both statements reference "Radiator" and state that Finney Reed opened the door to let Defendants into the house. There was also considerable consistency between the statements and the witnesses' accounts of the robbery. Accordingly, Defendants' Motions for

6

acquittal are denied.

### III. MOTION FOR MISTRIAL/ MOTION FOR NEW TRIAL PURSUANT TO RULE 33[2]

#### A. Standard of Review

A court may declare a mistrial when "'taking all the circumstances into consideration, there is a manifest necessity . . . or the ends of public justice would otherwise be defeated. . . . [T]he power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes' and in the exercise of 'a sound discretion.'"  United States v. Klein, 582 F.2d 186, 190 (2d Cir. 1978) (quoting United States v. Perez, 22 U.S. (9 Wheat.) 579 (1824)).

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." FED. R. CRIM. P. 33(a).  When deciding a Rule 33 motion, a court may evaluate the weight of the evidence and the credibility of witnesses.  United States v. Sanchez, 969 F.2d 1409, 1413 (2d Cir. 1992). However, the court may reject the jury's assessment of the credibility of witnesses only in "exceptional circumstances," such as when the "testimony is patently incredible or defies physical realities."  Sanchez, 969 F.2d at 1414.  While a "trial court has broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29 . . . it nonetheless must exercise the Rule 33 authority 'sparingly' and in 'the most extraordinary circumstances.'"  United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001) (quoting Sanchez, 969 F.2d at 1414).  A court should not grant a Rule 33 motion unless there is a "'real concern that an innocent person may have been convicted.'"  Ferguson, 246 F.3d at 134 (quoting Sanchez, 969 F.2d at 1414).

---

[2] As the issues relevant to Defendants' Motions for mistrial and for a new trial pursuant to Rule 33 substantially overlap, the Court will analyze these Motions together.

**B.     Discussion**

The Sixth Amendment guarantees a criminal defendant the right "to be confronted with the witnesses against him." U.S. CONST. amend. VI.  In Bruton v. United States, 391 U.S. 123 (1968), the Supreme Court held that "a defendant is deprived of his Sixth Amendment right of confrontation when the facially incriminating confession of a nontestifying codefendant is introduced at their joint trial, even if the jury is instructed to consider the confession only against the codefendant." Richardson v. Marsh, 481 U.S. 200, 207 (1987) (discussing Bruton).

The Second Circuit has held that "defense counsel may waive a defendant's Sixth Amendment right to confrontation where the decision is one of trial tactics or strategy that might be considered sound." United States v. Plitman, 194 F.3d 59, 64 (2d Cir. 1999).  "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" United States v. Olano, 507 U.S. 725, 733 (1993) (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)).  "The law is well established that if, 'as a tactical matter,' a party raises no objection to a purported error, such inaction 'constitutes a true waiver which will negate even plain error review.'" United States v. Quinones, 511 F.3d 289, 321 (2d Cir. 2007) (quoting United States v. Kon Yu-Leung, 51 F.3d 1116, 1122 (2d Cir. 1995)).

Defendants move for a mistrial and/or a new trial on the basis of a violation of their rights pursuant to Bruton and the Sixth Amendment.  The Government concedes that there is a Bruton issue in this case.  Each Defendant made oral and written statements to law enforcement that implicated himself and his Co-Defendant, and those statements were admitted into evidence without redaction.  Furthermore, Government witnesses testified as to the contents of those statements. However, the Government contends that Defendants have waived their right to object to any Bruton

violation in this case due to the Defendants' failure to timely object to the admission of the statements on Sixth Amendment grounds, the strategic decision by both Defendants to rely upon the statements as part of their defense, and their decision to only raise the Bruton issue after the close of proof.  The Government argues that the "tactical/strategic choice by both defendants is highlighted by the defense action only after the close of proof–moving for a mistrial, but not seeking any limiting instruction or objecting to the failure of the court to give one sua sponte, and arguing to the jury the defense theory that they did something else together, not the crime charged."  Response at 2.  Both Defendants' attorneys assert that they did not recognize the Bruton issue in this case until after the close of proof, and that their failure to move for separate trials or redaction of the statements was not the result of trial strategy, but due to their failure to recognize the issue.  Dkt. No. 87 at 3; Dkt. No. 88 at 3.

In Plitman, the Second Circuit held that the defendant, who faced prosecution for tax evasion, had waived his Confrontation Clause rights due to tactical decisions of his attorney. 194 F.3d at 61, 64.  The situation in the instant case is not entirely analogous to Plitman.  The defendant's attorney in Plitman stipulated to the admission of a hearsay account of a conversation between an Internal Revenue Service agent and the president of the defendant's employer, in an apparently strategic attempt to proceed to trial before the president would be available to testify.  Id. at 62, 64.  The Plitman court noted that the defendant "achieved several tactical advantages as a result of his decision to allow the hearsay testimony . . . [t]hose advantages included a quicker trial date, limitations on [the president's] testimony, and the opportunity to attack the accuracy of [the agent's] notes and recollection of the hearsay conversation."  Id. at 64.

Here, the Defendants did not stipulate to the admission of the statements of their Co-

Defendant.  However, Defendants never moved for separate trials or to redact the statements to comply with Bruton.  There is also no dispute that Defendants were aware that the Government intended to use the statements in its prosecution of the case.  Before trial, both Defendants moved to suppress the statements on Miranda grounds, and the Court denied the motions.  The Government's pretrial Exhibit List indicated that the Government intended to introduce the Defendants' written statements.  Dkt. No. 66.

At trial, the Government's opening argument indicated that the Government's evidence included written statements provided by Defendants to the police.  The opening argument also described both Defendants' statements in some detail.  Neither Defendant raised an objection to any portion of the Government's opening.  Moreover, both Defendants' openings statements referenced the statements and relied upon their inconsistencies as part of their defense strategy.

During the Government's direct examination of Detective Sergeant Riegert, the Government offered both Defendants' written statements into evidence.  Riegert also testified about the statements, and read the statements to the jury.  Neither Defendant objected to the admission of Defendant Pryor's statement or Riegert's testimony regarding the statement.  Defendant Bullock raised an objection to the admission of his own statement, "[o]nly insofar as any prior hearings that were held in regards to that statement, we would renew those objections and also ask it be redacted with respect to anything other than discussing the robbery that's at issue at this trial."  Defendant Pryor referenced the inconsistencies between the statements during his cross-examination of Riegert.

The next Government witness, Special Agent Kessler, also testified about both statements.  Neither Defendant objected to his testimony concerning the statements.  Defendant Bullock objected

10

to Kessler testifying about his notes from the interview, but not the statement itself.  Defendant Pryor objected to testimony concerning the subsequent interview with Pryor on June 5, 2005.  Both Defendants also referenced the inconsistencies of the statements during their cross-examination of Special Agent Kessler.  During a sidebar while Kessler was on the witness stand, both Defendants raised objections to the voluntariness of their own statements, but never raised the Confrontation Clause issue currently before the Court.  During the Government's re-direct examination of Kessler, the Government asked Kessler about the inconsistencies between the statements.  Defendant Pryor raised an objection to a question about whether the police had ever told him that they would not prosecute him for what he revealed during the interview.  However, this objection was on the ground that the testimony was outside the scope of Defendant Pryor's cross-examination of Kessler.

In summary, both Defendants failed to contemporaneously object to the admission of each other's statement.  Both defense attorneys engaged in significant cross-examination on the details of each Defendant's statement.  Defense counsel used the inconsistencies in support of their theory that the Defendants were referring to a different incident than the one charged in the indictment.  Any objections raised by the Defendants were to the voluntariness or other circumstances surrounding their own statements, rather than to the circumstances of each other's statement, and thus clearly did not raise any Confrontation Clause issue.

Defendants did not raise the Bruton issue until the *in camera* conference on April 3, 2009, after the close of proof in the case and before closing arguments.  Defendant Bullock's attorney raised the issue and moved for a mistrial, and Defendant Pryor's attorney joined in the Motion.  Both attorneys are experienced defense counsel, and had numerous opportunities before trial and during the presentation of proof to raise the Bruton issue.  Defendants could have easily either

sought separate trials or redaction of the statements. Here it is clear that Defense counsel attempted to use each Co-Defendant's statement as both a sword and shield– they affirmatively used the inconsistencies to bolster their defense, and then raised the Bruton issue at the eleventh hour, well after the Court could have redacted the statements or otherwise addressed the issue short of declaring a mistrial. The Court concludes that under these circumstances, Defendants have waived their right to object to the Bruton violation in this case. Cf. People v. Graham, 644 N.Y.S.2d 203, 204 (1st Dept. 1996) ("By acquiescing in joinder of defendant's and codefendant Ortiz's indictments, failing to request severance at any time, failing to seek any relief at or after the suppression hearing at which Ortiz's statement was ruled admissible against Ortiz, and by only raising the Bruton claim as the testimony was about to be received into evidence, defendant waived his present claim that he was denied the right of confrontation with respect to the non-testifying Ortiz's statement. Defendant's untimely objection made it impossible for the court to consider relief such as severance or redaction.").[3]

Given the totality of the evidence adduced at trial, the Court cannot otherwise conclude that the interests of justice require granting Defendants a new trial pursuant to Rule 33 or a mistrial. As noted above, the Government produced evidence on all of the elements required for conviction. While there are some inconsistencies regarding Defendants' statements, the evidence presented by the Government was more than sufficient to support a conviction. Nor does the Court see a sufficient reason to reject the jury's assessment of the credibility of the witnesses, or see any reason

---

[3] Because the Court concludes that Defendants waived, rather than merely forfeited, their Sixth Amendment rights pursuant to Bruton, the Court will not analyze the violation pursuant to the plain error standard applicable to forfeited claims. See Quinones, 511 F.3d at 321 (quoting Kon Yu-Leung, 51 F.3d at 1122; see also United States v. Olano, 507 U.S. 725, 732 (1993) (describing plain error standard of review).

to conclude that there is a "'real concern that an innocent person may have been convicted.'" Ferguson, 246 F.3d at 134 (quoting Sanchez, 969 F.2d at 1414).  Accordingly, Defendants' Motions for a new trial or a mistrial are denied.

## IV.     CONCLUSION

Based on the foregoing discussion, it is hereby

**ORDERED**, that Defendant Dolphus Pryor's Motion for acquittal, for a new trial or for a mistrial (Dkt. No. 87) is **DENIED**; and it is further

**ORDERED**, that Defendant Marcel Bullock's Motion for acquittal, for a new trial or for a mistrial (Dkt. No. 88) is **DENIED**; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on the parties.

**IT IS SO ORDERED**.

DATED:     June 17, 2009
           Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge